## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| STAR INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>IRON HORSE TOOLS, INC., and<br>GENERAL ELECTRIC COMPANY,<br>d/b/a GE LIGHTING,<br><br>    Defendant. | CV 16-48-BLG-SPW-TJC<br><br><br>**FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES<br>MAGISTRATE JUDGE** |

Plaintiff Star Insurance Company ("Star Insurance") brings this subrogation action to recover amounts paid to its insured, who is the owner of a warehouse that was damaged in a fire. (Doc. 23.) Star Insurance named a tenant of the warehouse, Iron Horse Tools, Inc. ("Iron Horse") as a defendant, alleging it negligently used clamp lights with halogen bulbs that started the fire. Star Insurance also brought a products liability action against General Electric Company, doing business as GE Lighting ("GE"), premised on the allegation that a halogen light bulb manufactured by GE was the cause of the fire.

Judge Watters has referred the case to the undersigned under 28 U.S.C. § 636(b)(1)(B). (Doc. 26.) Presently before the Court are GE's Motion for Summary Judgment (Doc. 28), Plaintiff's Motion to Strike Iron Horse's Reply in Support of the Motion for Summary Judgment (Doc. 40), and GE's Motion to

1

Strike the Affidavit of Michael J. Foley.  (Doc. 43.)  The motions are fully briefed and ripe for the Court's review.  (Docs. 29, 31, 32, 36, 41, 42, 44, 45, 46, 47, 49.)

Having considered the parties' submissions, the Court **RECOMMENDS** GE's Motion for Summary Judgment be **DENIED**, Star Insurance's Motion to Strike be **GRANTED**, and GE's Motion to Strike the Affidavit of Michael J. Foley be **GRANTED** in part and **DENIED** in part, as set forth below.

## I.     BACKGROUND

### A.     Factual Background[1]

Kelly Supply, Inc. ("Kelly Supply") owned a steel-framed warehouse in Sidney, Montana (the "warehouse").  (Doc. 33 at ¶ 1.)  Star Insurance provided Kelly Supply with a commercial insurance policy for the warehouse that included coverage for loss caused by the fire.  (*Id.* at ¶¶ 2-3.)

Kelly Supply leased a portion of the warehouse to Iron Horse.  (Doc. 33 at ¶ 4.)  Iron Horse is in the business of supplying oil field drilling pressure control equipment, and it stored and serviced equipment in the warehouse.  (*Id.* at ¶¶ 5-6.)  Iron Horse occupied the southwest portion of the warehouse, and its space was approximately 50 feet by 50 feet.  (Docs. 30-1 at 11; 30-2 at 12; 30-3 at 7.)  Iron Horse had constructed wooden storage racks and placed them along the east and

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions and are taken from the parties' submissions.

south walls of its portion of the warehouse.  (*Id.* at ¶ 7.)  Clamp style light fixtures were affixed to two of the racks on the east wall.  (*Id.* at ¶ 39.)

The lights are depicted in a pre-fire photograph of the interior of the Iron Horse space, which was taken by an Iron Horse employee on or about the morning of the fire.  (Docs. 30-1 at 11, 51-52; 30-4 at 18.)  The photo showed three wood shelving units placed along the east wall of the warehouse.  (Doc. 30-1 at 11.)  A light is shown attached to the northern-most storage rack, and another light attached to the middle storage rack.  (*Id.*)  Both of the lights were turned on in the photo.  (*Id.*)

The fire was discovered at the warehouse at approximately 11:45 p.m. on March 11, 2013.  (Doc. 33 at ¶ 8.)  The fire burned into the morning of March 12, 2013, and caused extensive damage to the structure and contents located inside. (*Id.*)

On April 12, 2013, a joint site inspection was conducted to investigate the cause and origin of the fire.  (Docs. 30-1 at 10, 51; 30-3 at 7.)  Star Insurance's experts Michael J. Foley and Lonnie Larson attended, as well as GE's experts from Safety Engineering Laboratories, Inc.  (*Id.*)  Laboratory examinations of artifacts recovered from the warehouse were conducted by the parties' experts.  (Docs. 30-1 at 10; 30-2 at 12; 30-3 at 7.)  The cause of the fire was also subsequently investigated by an expert retained by Iron Horse.  (Doc. 30-2 at 12-15.)  The

investigations resulted in three widely divergent opinions as to the cause and origin of the fire.

Star Insurance's expert, Mr. Larson, provided an expert report opining that the origin of the fire was located along the east wall, approximately 38 feet north of the south wall. (Doc. 30-1 at 52, 54, 58.) The area corresponded with the location of the north storage rack. (*Id.* at 52.) Mr. Larson stated a clamp light was discovered in the area of origin. (*Id.* at 52.) The clamp light was located at the north end of the north storage rack. (*Id.*) Mr. Larson opined that the most probable cause of the fire was related to the clamp light fixture. (*Id.* at 55.) In his supplemental report, Mr. Larson further indicated that the only viable heat source for the fire was a GE halogen bulb, which was purportedly used in the clamp fixture. (*Id.* at 59-60.) Mr. Larson concluded that multiple other pieces of equipment and wiring were eliminated as potential causes of the fire during the inspection, including a forklift, air compressor, pressure washer, and hanging furnace. (*Id.* at 52-53.)

Star Insurance's other expert, Mr. Foley, provided an expert report also opining that a clamp light fixture located at the north end of the north storage rack was the most probable ignition source of the fire. (Doc. 30-1 at 23.) Mr. Foley further stated that the clamp light likely had a GE brand, 100 watt, type PAR 38, Halogen SP 10º spotlight bulb in the fixture. (*Id.* at 21.) Mr. Foley reached this

4

conclusion based on the recovery of fragments of GE halogen bulbs near the middle storage rack, which he believes indicates that a halogen bulb was likely used in the clamp light on the middle rack. (*Id.* at 16.) Mr. Foley further concluded that the same GE halogen bulb was likely used in the clamp light on the north storage rack, since the pre-fire photo showed the lights on the north and middle storage racks had the same level of brightness. In Mr. Foley's opinion, this indicates bulbs of the same wattage and type were used in both fixtures. (*Id.* at 21.)

Mr. Foley also conducted laboratory testing with an exemplar clamp light fixture and GE halogen bulb, and found they were capable of creating enough heat to start a fire. (*Id.* at 19-20.) Mr. Foley further opined that the building electrical system or components were not the cause of the fire (*Id.* at 20), and that the clamp light was the only heat source in the fire origin area capable of starting the fire. (*Id.* at 21.)

Mr. Foley further opined that the lights on the storage racks were on at the time of the fire. He based this opinion on the condition of a lamp filament recovered in the investigation, and his conclusion that building wiring and extension cords in the area of the fire's origin were energized at the time of the fire. (*Id.* at 14-15.)

Finally, Mr. Foley offered opinions regarding the warnings issued with the GE halogen bulb.  (*Id.* at 22-23.)  He noted that the warnings provided with the halogen bulb were located on the inside of the packaging, and not on the outside of the package or on the bulb itself.  (*Id.* at 17-18, 23.)  In Mr. Foley's view, this would have diminished the effectiveness of the warning.  (*Id.*)  He also observed that the warnings given with the bulb and those provided with the light fixture were inconsistent.  (*Id.* at 18, 22, 23.)  In particular, he noted that the fixture warned the light should not remain energized while unattended, while the bulb did not.  (*Id.*)

GE's expert, Donald J. Hoffman, also provided an expert report in which he appears to agree with Mr. Larson's opinion that the fire likely originated along the east wall, approximately 38 feet north of the south wall. (*Id.* at 30-3 at 10.)  But Mr. Hoffman opined that the cause of the fire was an improperly installed GFI receptacle located in a junction box along the east wall, not the clamp light fixture. (*Id.* at 11-13.)

Mr. Hoffman also disagreed with Mr. Foley's conclusions regarding the probability that a GE halogen bulb caused the fire, pointing out that there was no physical evidence of any bulb in the clamp light fixture in the area of origin.  (*Id.* at 8, 11.)  He noted that because no bulb was recovered from that clamp light, it was unlikely the bulb was a GE halogen bulb, since a halogen bulb would have been

6

capable of surviving the fire.  (*Id.* at 10.)  He, therefore, concluded the bulb in the clamp fixture was likely made of thinner glass, such as an incandescent bulb, which could be destroyed by the fire.  (*Id.* at 10-11.)

Iron Horse retained Randolph J. Harris as an expert in this matter.  Mr. Harris provided an expert report opining that the cause of the fire is undetermined. (Doc. 30-2 at 13.)  Mr. Harris stated the fire damage was too severe to make an accurate determination.  (*Id.*)  Mr. Harris noted the Sidney Fire Department concluded the origin of the fire was in the south half of Iron Horse's space, which was a completely different area than that identified by the other experts in this case.  (*Id.*)  Mr. Harris further disagreed with the other experts' determination of the area of origin because it was not the area of most severe damage.  (*Id.*)  He also stated that the furnace, pressure washer, fork lift, air compressor, and building electrical system could not be eliminated as the fire's cause.  (*Id.*)

Mr. Harris also disagreed with the assumptions relied on by Mr. Foley in concluding that the origin of the fire was the clamp light and halogen bulb.  (*Id.* at 14.)  He points to discussions he had with an Iron Horse employee, Pat Berka, who stated that they never used halogen bulbs in the clamp lights.  Mr. Berka also advised him that the clamp lights in the warehouse had on/off switches, and they were always turned off when the Iron Horse employees left for the night.  Mr. Berka also informed Mr. Harris that there was an old motion detector light on the

7

east wall of the warehouse which had halogen lights.  (*Id.* at 14.)  In Mr. Harris's opinion, Mr. Foley incorrectly assumed the halogen bulbs were from the clamp lights, but they were actually from the old motion detector light.  (*Id.*)  He also disagreed with Mr. Foley's opinion that the lights were on at the time of the fire, finding there were no indications the clamp lights were energized.  (*Id.* at 14-15.)

Mr. Berka and fellow Iron Horse employee Joseph Almeida were deposed during discovery.  (Docs. 30-4, 30-5.)  Mr. Berka confirmed that Iron Horse used clamp light fixtures on or near wood shelves that were located along the east wall of the space occupied by Iron Horse.  (Doc. 30-4 at 3.)  Mr. Berka testified that the clamp fixtures had on/off switches, and their procedure was to turn off the lights at the end of the day.  (*Id.* at 8-9, 13-14.)  He stated he purchased halogen bulbs, but never installed them in the clamp light fixtures.  (*Id.* at 9, 11, 18.)  He said he only used regular bulbs in the clamp fixtures.  (*Id.* at 12, 17.)  Mr. Berka stated that halogen bulbs were only used in their space in a motion detector light fixture.  (*Id.* at 5-6.)

Mr. Berka stated he knew halogen bulbs are hot and present a risk of fire.  (*Id.* at 15.)  He testified that he would look at the wattage of bulbs he purchased, and bought the correct bulb for the fixtures.  (*Id.* 9-10, 12.)  Mr. Berka also indicated that he would follow warnings issued for the use of the lighting products.  He acknowledged, for example, that if he was warned extension cords should not

be used with the clamp light fixtures, he would have changed the manner in which the lights were installed in the warehouse. (*Id.* at 13-14.)

Mr. Almeida similarly testified that he installed regular household light bulbs in the clamp light fixtures. (Doc. 30-5 at 3-4.) He believed the clamp light fixtures were limited to 60-watt bulbs. (*Id.* at 4.) Mr. Almeida also stated the clamp fixtures had a toggle on/off switch, and that he used the toggle switch to turn them off. (*Id.* at 5.) Mr. Almeida said at the end of each day he turned off all the lights, made sure the air compressor was turned off, and locked the door. (Doc. 34-2 at 4.)

### B. Procedural Background

Star Insurance originally brought this action in Montana state court on March 9, 2016. (Doc. 1.) On April 29, 2016, GE removed, invoking the Court's jurisdiction under 28 U.S.C. § 1332. (*Id.*) Star Insurance filed a First Amended Complaint on July 14, 2016. (Doc. 23.)

On July 14, 2017, GE filed the instant Motion for Summary Judgment. (Doc. 28). On August 1, 2017, Iron Horse filed a document entitled Response to and Joinder in General Electric's Motion for Summary Judgment. (Doc. 31.) The joinder was filed approximately two weeks after the pretrial motions filing deadline had passed. (Doc. 24.) Iron Horse indicated it joined in GE's argument that there is no evidence to support Plaintiff's theory that the fire was caused by a clamp light

9

with a halogen bulb.  (Doc. 31.)

On August 4, 2017, Star Insurance opposed the Motion for Summary Judgment.  (Doc. 32.)  In support of its opposition, Star Insurance submitted an Affidavit from its expert, Michael J. Foley.  (Doc. 35.)

After Star Insurance filed its opposition, both GE and Iron Horse filed reply briefs.  (Docs. 36, 45.)  GE also filed a Motion to Strike the Affidavit of Michael J. Foley, on grounds that it was an improper and untimely supplemental expert report. (Doc. 43.)

Star Insurance then filed a Motion to Strike the Reply of Iron Horse, on grounds that it was procedurally improper and unfairly prejudicial.  (Doc. 40.)

## II.    DISCUSSION

### A.    Plaintiff's Motion to Strike Iron Horse's Reply

Star Insurance moves to strike Iron Horse's reply brief (Doc. 36) and supporting Affidavit of Jon Dyre (Doc. 37).  Star Insurance argues the reply is procedurally improper because Iron Horse never filed a motion for summary judgment, and never filed a brief in support of any such motion.  Star Insurance also asserts Iron Horse's reply is prejudicial because it sets forth new arguments and factual assertions, which Star Insurance was not given a fair opportunity to respond to.

10

Iron Horse counters that it is commonplace and practical for one party to join a co-party's brief or motion.  Iron Horse argues that by filing the joinder to GE's Motion, it effectively became a moving party requesting summary judgment. Therefore, Iron Horse contends it was procedurally proper for it to file a reply brief.  Iron Horse further argues there is no unfair prejudice because its reply brief advances the same argument put forth by GE – that Star Insurance does not have evidence to support its theory of how the fire started.

"The Federal Rules of Civil Procedure neither permit nor forbid joinders in summary judgment motions."  *In re Hujazi*, 2017 WL 3007084, *6 (9th Cir. BAP July 14, 2017).  The Court's Local Rules also do not specifically address joinders in motions.  The Local Rules provide that "[a] motion, if opposed, must be accompanied by a brief in support filed at the same time as the motion."  L.R. 7.1(d)(1)(A).  All responses to motion for summary judgment are due 21 days after the motion was filed, and the moving party is permitted to file a reply within 14 days after the response was filed.  L.R. 7.1(d)(1)(B)-(C).

In *In re Hujazi*, several creditors in a bankruptcy proceeding filed joinders in a motion for summary judgment filed by another creditor.  All of the joinders had been filed after the debtor had opposed the motion for summary judgment.  *In re Hujazi*, 2017 WL 3007084 at *3.  The bankruptcy court permitted those which were "simple joinders," but struck one of the creditors' joinders because it

attempted to substantively argue the motion.  *Id.*   On appeal to the Ninth Circuit

Bankruptcy Appellate Panel, the Court rejected the debtor's argument that the

joinders were improper, and affirmed the rejection of the substantive joinder.  The

Court stated "[a]ll of the joinders except for Mr. Hyman's were simple 'me too'

statements that did not add any argument or evidence to [the] initial motion; the

bankruptcy court properly excluded Mr. Hyman's supplemental argument and

evidence as untimely."  *Id.* at *7.

*In re Hujazi* indicates that simple "me too" joinders, like the one Iron Horse

initially filed, are not problematic.  But if a party seeking to join wants the

opportunity to offer substantive argument and evidence, joinder is not the proper

vehicle, particularly when the substantive arguments are raised for the first time

after an opposition has been filed.  The proper course is for the party to file its own

fully briefed motion, which will alleviate due process and prejudice concerns.

Here, the Court finds Iron Horse's initial joinder in GE's Motion for

Summary Judgment was permissible.  Since Iron Horse chose not to file a fully

briefed summary judgment motion of its own, however, the Court declines to

consider its substantive reply brief.  The Court notes that for the most part, the

arguments raised by Iron Horse in its reply are duplicative of those raised by GE in

the Motion for Summary Judgment, and therefore, the reply is not particularly

prejudicial to Plaintiff.  For the same reason, however, the reply is also not

12

necessary to the Court's determination of the motion, as the issues have been thoroughly addressed by GE in its opening brief and reply.

Accordingly, the Court recommends that Plaintiff's Motion to Strike be **GRANTED**.

## B.    Motion to Strike Affidavit of Michael J. Foley

GE argues the Affidavit of Plaintiff's expert, Michael J. Foley, which was filed in support of Plaintiff's opposition, should be stricken as an untimely supplemental expert report.  GE contends Mr. Foley's Affidavit interjects new opinions that were not previously disclosed in his initial expert report. Specifically, GE argues Mr. Foley attempted to bolster his qualifications on effective warning instructions, added additional opinions addressing the physical evidence found at the fire scene, and expressed new opinions about the allegedly defective warning label.  Star Insurance counters that Mr. Foley's Affidavit did not assert new opinions, but rather provided sworn testimony on the issues previously addressed in his report.

Under the Federal Rules of Civil Procedure, an expert witness disclosure must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them; the data or other information considered by the witness in forming them; any exhibits that will be used to summarize or support them," and "the witness's qualifications."

13

Fed.R.Civ.P. 26(a)(2)(B).  Expert disclosures must be made at the time and in the sequence ordered by the Court.  Fed.R.Civ.P. 26(a)(2)(D).  A party is permitted to supplement or correct a disclosure "if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed.R.Civ.P. 26(e).  "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  *Id.*

Supplementation under Rule 26(e) "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998).  Rule 26(e) does not "give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report."  *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 639 (D.Haw. 2008) (quotation omitted).  "To countenance a dramatic, pointed variation of an expert's disclosure under the guise of Rule 26(e)(1) supplementation would be to invite the proverbial fox into the henhouse.  The experienced expert could simply 'lie in wait' so as to express his genuine opinions only after plaintiff discloses hers."  *Keener*, 181 F.R.D. at 641.

14

Even though Rule 26 requires that expert disclosures be complete, "there is no requirement that such disclosures cover any and every objection or criticism of which an opposing party might conceivably complain.  In other words, an expert need not stand mute in response to an opposing party's *Daubert* motion." *Allgood v. General Motors Corp.*, 2006 WL 2669337, *5 (S.D. Ind. Sept. 18, 2006) (denying motion to strike declarations of the plaintiffs' experts that were filed in response to *Daubert* motion because they either responded to the defendant's specific *Daubert* criticisms or harmlessly repeated information provided in their earlier reports). *See also Wilson Road Dev. Corp. v. Fronabarger Concreters Inc.*, 971 F.Supp.2d 896, 903 (E.D. Mo. 2013) (denying motion to strike expert declarations "that merely expand upon or clarify initial opinions that the defendants had an opportunity to test during discovery."); *c.f. Friebel v. Paradise Shores of Bay County, LLC*, 2011 WL 2420230, *2 (N.D. Fla. June 13, 2011) (granting motion to strike expert's supplemental report that contained information that "was not a natural extension of the [initial] report").

If a party fails to comply with the rules regarding expert witnesses under Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."  Fed.R.Civ.P. 37(c)(1).  The Ninth Circuit has stated the following factors should be considered when determining whether a

violation of the expert discovery rules is harmless: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith of willfulness involved in not disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed.Appx. 705, 713 (9th Cir. 2010).

Here, the record reflects that Star Insurance timely disclosed Mr. Foley as an expert, and provided his initial expert report within the deadlines established by the Court's Scheduling Order.  (Docs. 24; 44-1, 44-2.)  After GE filed its Motion for Summary Judgment, Star Insurance submitted an Affidavit from Mr. Foley purporting to respond to GE's arguments.  For the most part, the Affidavit reiterates Mr. Foley's findings from his initial report with additional clarification and explanation.  The Affidavit also provides additional detail regarding his qualifications.  (Doc. 35.)  The Court has examined Mr. Foley's expert report and his Affidavit, and with one exception, concludes Mr. Foley's Affidavit is not "a dramatic, pointed variation" of his expert report.  *Keener*, 181 F.R.D. at 641.  Rather, most of the information contained in the Affidavit falls within the scope of Mr. Foley's expert report.

As to the disclosure of Mr. Foley's qualifications, his expert report included a five-page CV that succinctly set forth his education, employment history, experience, and professional memberships.  (Doc. 44-2 at 18-22.)  Mr. Foley's

Affidavit provides additional details about the information that was previously

disclosed in his CV that specifically addresses concerns raised in GE's Motion.

(Doc. 35 at ¶¶ 1-7.)

Mr. Foley's affidavit also did not provide any new opinions regarding his

analysis of the physical evidence. His initial report described and discussed the

physical evidence found at the fire scene. (Doc. 44-2 at 4-11.) In particular, it

included his opinion that the clamp lights were on at the time of the fire. It also set

forth the basis for the opinion, including the condition of the lamp filament

recovered at the scene, as well as energized extension cords and wiring in the

building. (*Id.* at 6-8.) The report also included his opinions as to the type of

fixture which was likely used by Iron Horse in the warehouse, and whether it had

an on-off switch. These are the same opinions covered by the Affidavit.

Therefore, the Court finds Mr. Foley's statements in the Affidavit addressing the

physical evidence harmlessly repeats information already contained in his initial

report, and are merely explanatory in nature. Mr. Foley did not assert any new

conclusions based on the physical evidence that were not fairly contained within

his expert report.

In addition, Mr. Foley's initial report adequately disclosed most of his

opinions regarding the allegedly defective warnings. He opined that the form and

location of the warnings for the GE halogen bulb were inadequate, and that the

content of the warnings were inconsistent with the warnings on the clamp light fixture.  Specifically, Mr. Foley's report stated that the exemplar GE halogen bulb had product warnings printed on the inside of the packaging carton, but not on outside of the carton or on the bulb.  (Doc. 44-2 at 9-11, 15.)  He contrasted this with the exemplar clamp light fixture, which had the warnings on the product packaging and the fixture itself.  (*Id.* at 10.)  The report also included Mr. Foley's opinion that the placement of the warning on the inside of the package diminished the likelihood that the information would be observed by the purchaser of the product.  (*Id.* at 15.)  Mr. Foley further contrasted the warnings provided with the fixture and the GE halogen bulb, and noted that only the fixture's warnings stated the light should not be left on while unattended.  (*Id.* at 9-11, 14-15.)

In his Affidavit, Mr. Foley reiterated his finding that the GE bulb only had a warning printed on the inside of the packaging.  (Doc. 35 at ¶ 14.)  Mr. Foley also stated none of the warnings on the GE bulb told the user to turn off the bulb when unattended, and that such a warning should have been given.  (*Id.* at ¶¶ 15, 17.)  These opinions were fairly disclosed Mr. Foley's initial report.

It also appears that GE was fully aware from the disclosure of Mr. Foley's opinions in this regard.  In its motion for summary judgment (which was filed before the Affidavit was submitted), GE stated "[t]he sole theory advanced by Mr.

Foley is that halogen lamps should have warning labels indicating they are hot and that they should be unplugged when not in use."[2]  (Doc. 29 at 14.)

The only warning-related opinion set out in Mr. Foley's affidavit which is not adequately covered in his report is the opinion that GE should have warned consumers not to use the GE halogen bulb in fixtures that do not contain an on-off switch.  (Doc. 35 at ¶ 18.)  In his report, Mr. Foley does state that the fixture likely used by Iron Horse in the warehouse did not have an on-off switch, and he also stated that the placement of the fixture behind the storage rack would make it inconvenient to repeatedly unplug the light.  (Doc. 30-1 at 17, 22.)  But those observations were made in connection with Mr. Foley's discussion of the improper selection and use of the product by Iron Horse, and the likelihood that the fixtures were, in fact, de-energized when unattended.  Mr. Foley makes no mention or reference to any opinion that GE should have warned against the use of the bulb in a fixture without an on-off switch.  Therefore, paragraph 18 of Mr. Foley's affidavit is an inappropriate supplementation to his expert disclosure, and will not be considered by the Court in connection with the present motions.

Accordingly, it is recommended that GE's Motion to Strike be **GRANTED** with respect to paragraph 18 of the Affidavit, and otherwise **DENIED**.

---

[2] GE was also informed during discovery that Star Insurance contended the warning label was defective because it "did not warn of the risk of leaving the lamps on unattended among other risks."  (Doc. 47 at 8-9.)

### C.     Motion for Summary Judgment

In its motion for summary judgment, GE contends Star Insurance lacks any evidence in the record to establish that a GE bulb caused the fire, or that a GE halogen bulb was even used in the clamp light fixture.  (Doc. 29.)  GE points out that no remains of a halogen bulb were found in the clamp light fixture that allegedly started the fire, and there is no evidence of causation aside from the speculation of Star Insurance's experts.  GE also contends the testimony of Iron Horse employees that they did not use halogen bulbs in the clamp light fixtures, and that the clamp lights were always turned off when not in use, is undisputed.

GE further argues that even assuming Star Insurance could establish that a GE halogen bulb was used in the clamp light fixture, Star Insurance's failure to warn claim is fatally flawed.  GE asserts Star Insurance cannot establish that a failure to warn was the proximate cause of the fire.  In this regard, GE maintains there is no evidence that a different warning would have altered Iron Horse's use of the product or prompted it to take precautions to avoid injury.  GE further argues Star Insurance's experts are not qualified to render opinions on the adequacy of product warnings.

Star Insurance counters that it has brought forth adequate evidence and expert opinion testimony to establish that a GE halogen bulb caused the fire.  (Doc. 32.)  Star Insurance also argues that the testimony of the Iron Horse employees is

not undisputed, and that physical evidence recovered from the fire scene directly contradicts their testimony.  Star Insurance further contends that its experts are qualified to testify on product liability issues, including the adequacy of warnings. In short, Star Insurance asserts that it has offered sufficient evidence to establish each element of a failure to warn claim.

### 1.    Legal Standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways:  (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to

establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.   If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See*

*Matsushita*, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact.  *Kennan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

### 2.     Evidence Regarding GE Halogen Bulbs

The Montana Supreme Court has adopted the theory of strict products liability as set forth in the Restatement (Second) of Torts § 402A, which provides "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property."  *Brown v. North Am. Mfg. Co.*, 576 P.2d 711, 716 (Mont. 1978.)

Under Montana law, proof of a product defect may be established "by circumstantial evidence and inferences therefrom, as well as direct evidence."  *Brandenburger v. Toyota Motor Sales, Inc.*, 513 P.2d 268, 276 (Mont. 1973).

The Court has cautioned, however, that strict liability is not absolute liability. *Brown*, 576 P.2d at 717.  A plaintiff cannot sustain its burden of proof by "merely establishing the fact of the occurrence of an accident."  *Id.*  A plaintiff must show "a traceable defect, causation, and damage or injury."  *Id.*  Nevertheless, a flexible standard of proof applies for products liability claims.  "[I]t is well established that in actions dealing with product liability, sufficient evidence to make a prima facie case may consist of establishing the circumstances of the incident, similar occurrences under similar circumstances, and elimination of alternative causes." *Hagen v. Dow Chemical Co.*, 863 P.2d 413, 417 (Mont. 1993).  In this regard, the Montana Supreme Court has acknowledged that the nature and quality of evidence used in products liability cases "naturally varies," and noted that even if an accident destroys the product, "an expert's opinion on the probabilities that a defect caused the accident would be helpful."  *Brandenburger*, 513 P.2d at 518 (citing *Stewart v. Budget Rent-A-Car Corp.*, 470 P.2d 240 (Haw. 1970)).

Here, GE first contends that there is no direct evidence that a GE halogen bulb caused the fire, or was even used in the clamp light fixture.  As GE points out, "there can be no valid products liability claim without proof of the presence of a defective product."  63 Am.Jur.2d *Products Liability* § 6 (2017).

In response, Star Insurance asserts there are genuine issues of material fact as to whether a GE bulb was used and was the cause of the fire.  Star Insurance

contends that physical evidence recovered at the scene supports its theory, including (1) that remnants of GE halogen bulbs were recovered in the area where the middle light is depicted in the pre-fire photograph; (2) the two lights shown in the pre-fire photograph have the same brightness and characteristics, indicating they were of the same type and wattage; (3) the clamp light fixture likely had a ceramic base which is conducive to the use of a halogen bulb; (4) no remnants of an incandescent bulb were found near the clamp fixture at the location of origin. Star Insurance also points to its experts' opinions that the clamp fixture on the north rack was the likely source of the fire, that the lights were on at the time of the fire, and the heat of a halogen bulb would have been sufficient to ignite a fire. Its experts have also offered opinions eliminating other potential causes of the fire. Drawing all inferences in the light most favorable to the non-moving party, the Court finds this evidence is sufficient to raise an issue of material fact as to whether a GE halogen bulb was used in the fixture and was the cause of the fire.

GE further argues, however, that the Iron Horse employees testified that no halogen bulbs were ever used in the clamp lights. They also testified that the clamp fixtures had an off-on toggle switch that was used every day to turn the lights off when not in use. GE maintains that this testimony is undisputed.

Star Insurance responds by asserting that the employees' testimony is contradicted by physical evidence recovered from the scene, which raises questions

about the credibility, reliability, and veracity of their testimony.  For example, Iron Horse points out that the evidence shows the clamp light fixtures were energized at the time of the fire (Doc. 30-1 at 14-15, 59), which is contrary to Mr. Berka and Mr. Almeida's testimony that they always turned the lights off at the end of the day.  (Docs. 30-4 at 13-14; 34-2 at 4.)  Their testimony that the lights had an on-off toggle switch is also contradicted by Mr. Foley's opinion that it is unlikely that the particular lights used by Iron Horse had an on-off switch.  Accordingly, the Court finds there are disputed issues of fact regarding the accuracy of the employees' testimony.  As noted above, credibility determinations and weighing the strength of evidence are inappropriate for summary judgment

Finally, GE contends Star Insurance's experts' opinions on these issues are nothing more than speculation, based on incorrect assumptions about the bulb fragments that were recovered from the scene.  Therefore, GE urges the Court to exclude both Mr. Larson and Mr. Foley's opinions on the cause and origin of the fire.

GE raises several arguments attacking the credibility of the experts' opinions which a jury may ultimately find persuasive.  Nevertheless, these arguments go to the weight of the testimony, not to its admissibility.

 The trial court acts as a gatekeeper by excluding expert evidence that does not meet standards of relevance and reliability.  *Messick v. Novartis Pharm. Corp*.,

747 F.3d 1193, 1196 (9th Cir. 2014). "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Id.* (quoting *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995)). Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). The Court should screen out "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car Inv. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. *See also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n. 14 (9th Cir. 2004) (noting "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)).

Here, it appears that Star Insurance has the ability to qualify both Mr. Larson and Mr. Foley to render opinions at trial on the cause and origin of the fire. Mr. Larson has extensive experience with fire investigations, and Mr. Foley has

experience in electrical accident investigation and fire reconstruction.  (Doc. 30-1 at 27-36, 63-67.)

It also appears that Mr. Larson and Mr. Foley's opinions meet the threshold relevance and reliability requirements.  Both experts reached their conclusions regarding the origin and cause of the fire after conducting a site inspection, reviewing photographs, analyzing artifacts recovered from the fire in a laboratory setting, considering and eliminating other potential causes of the fire, and conducting scientific experiments with exemplar products.  (*See* Doc. 30-1 at 10, 51, 57.)  Therefore, the factual basis for Mr. Larson and Mr. Foley's opinions on the origin and cause of the fire, and any limitations arising from the assumptions upon which they formed their opinions, are proper subjects for cross-examination. *See Alaska Rent -A-Car Inv.*, 738 F.3d at 969.

In sum, the Court finds that Star Insurance has come forth with sufficient evidence to establish there are genuine issues of material fact for trial.  The origin and cause of the fire is disputed by the parties' experts, with Star Insurance claiming the fire was caused by a GE halogen bulb, GE asserting it was caused by a defective GFI receptacle, and Iron Horse's expert concluding the origin and source of the fire cannot be determined, but opining that Star Insurance's theory was incorrect for a number of reasons.  These are factual disputes that are for the trier of fact to resolve.  *See Wood v. Old Trapper Taxi*, 952 P.2d 1375, 1381

(Mont. 1997) ("Juries have an uncanny ability to evaluate the credibility of a witness, especially an expert.  Problems presented in a case such as this, namely conflicting expert testimony and missing evidence, are best solved by juries.")

As such, viewing the evidence in the light most favorable to Iron Horse, the Court finds there are genuine disputes of material fact about whether a GE halogen light bulb caused the fire.  Accordingly, GE's Motion for Summary Judgment on that basis should be denied.

### 3.   Failure to Warn

A failure to warn claim is recognized under Montana law as a distinct cause of action under products liability.  *Riley v. Am. Honda Motor Co., Inc.*, 856 P.2d 196, 198 (Mont. 1993).  The elements are the same as any other strict products liability claim.  *Id.*  A showing of proximate cause is required.  *Id.*  Specifically, the plaintiff must "establish a causal link between the lack of a warning and the accident and injuries."  *Id.* at 200.  "While causation is ordinarily a question of fact in a failure to warn case, it may be determined as a matter of law where reasonable minds can only reach one conclusion.  *Wood v. Old Trapper Taxi*, 952 P.2d 1375, 1383 (Mont. 1997).  No such finding can be made in this case.

GE first argues Star Insurance has no evidence to support its failure to warn claim because its experts are not qualified to provide opinions on product warning labels.  Again, however, it appears that Star Insurance may be able qualify Mr.

29

Foley as an expert to testify in the area of product warnings for electrical

equipment.[3]  Mr. Foley explained that his prior work experience included

developing instructions and warning labeling for electrically operated process

machinery.  (Doc. 35 at ¶ 2.)  He also stated he has gained knowledge of lighting

systems and warning instructions through various professional memberships,

---

[3] Although not addressed by the parties, the Court notes that Star Insurance may not need expert testimony on the failure to warn claim.  In *Streich v. Hilton Davis*, 692 P.2d 440, 442-43 (Mont. 1984), the Montana Supreme Court indicated that expert opinion is not necessary in a failure to warn case if a layman could understand the insufficiency of the warning.  There, the Court held the plaintiff did not need expert testimony that the warnings associated with an agricultural product were deficient.  *Id.*  The Court noted that the plaintiff's expert had provided scientific literature showing the adverse side effects of a chemical found in the defendant's product.  The Court stated the warning on the defendant's product "hardly matched the possible adverse side-effects from its use.  Any layman could understand the insufficiency of the warning.  Expert testimony was not necessary." *Id.* at 443.  *See also Berg v. Johnson & Johnson Consumer Co.*, 983 F.Supp.2d 1151, 1160 (D. S.D. 2013) (holding expert testimony was not required in a failure to warn case and noting "[a] layperson is in a position (if not the best position) to know whether a particular harm or possible harm is deserving of a warning."); *Pitterman v. Gen. Motors LLC*, 2016 WL 1732710, *11 (D. Conn. April 29, 2016) (stating where "easily comprehensible concepts" were at issue, a lay person who had been informed of the risks associated with a product could look at the warnings and determine if they were sufficient); *Dockhorn v. Kitchens by Kleweno*, 2010 WL 1196425, *22 (D. Kan. 2010) (finding expert evidence was not required in failure to warn case and stating "the issue boils down to whether plaintiff received the warning and if so, was it adequate to apprise her of the dangers of the halogen lights as used in her kitchen/laundry room, and alternatively, whether a warning was required at all.  In this context, adequacy of warnings is not too complex for a lay juror to decide.").  Here, working with light bulbs and light fixtures is something the average lay person does on a regular basis.  Therefore, the adequacy of the warnings on a halogen light bulb may not be beyond the comprehension of a lay person.

participation in conferences, and research he has conducted as an Electro-Forensic Engineer.  (*Id.* at ¶¶ 3-7.)  GE may point out any shortcomings in his qualifications and experience through cross-examination.  *See United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (stating an expert's "lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert"); *Kannankeril v. Terminix Intl., Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ("If the expert meets liberal minimum qualifications [under Rule 702], then the level of the expert's expertise goes to credibility and weight, not admissibility").

GE also argues Star Insurance's claim fails as a matter of law because there is no evidence Iron Horse's employees would have altered their practices or taken precautions if the warnings were different.  The Montana Supreme Court has recognized that "[c]ausation for a failure to warn claim can be satisfied by evidence that a warning would have altered the . . . use of a product or prompted the [user] to take precautions to avoid the injury."  *Wood*, 952 P.2d at 1383.   This requirement can be satisfied by a plaintiff's testimony that they would have altered their conduct if they had been warned.  *Riley v. American Honda Motor Co., Inc.* 856 P.2d 196, 199 (Mont. 1993).  But the Montana Supreme Court has also made clear that such testimony is not the only way to establish causation in a failure to warn case.  *See e.g., Patch v. Hillerich & Bradsby Co.*, 257 P.3d 383, 389-90 (Mont. 2011) (testimony that a deceased baseball player "followed guidelines,"

31

and that his teammates altered their conduct after his death was sufficient to submit failure to warn claim to the jury).

Unlike *Riley* and many other products cases, this case does not involve an injured plaintiff who can simply make a self-serving declaration that they would have altered their conduct if warned.  Nevertheless, Star Insurance points out that Mr. Berka testified that he read the warnings and wattage recommendations on fixtures, and followed those recommendations in purchasing and using bulbs.  Mr. Berka also acknowledged that he would have altered his conduct and used the bulbs and fixtures in accordance with other hypothetical warnings.  For example, Mr. Berka indicated he would have changed the way the lights were used if he had been warned not to power the fixture and bulb by an extension cord.  (Doc. 30-4 at 13-14.)  Given the flexible standard of proof in products liability cases, the Court finds this evidence raises a genuine issue of material fact regarding causation.  The testimony indicates that Iron Horse employees generally read fire hazard warnings and altered their conduct accordingly.

Therefore, Star Insurance has established genuine issues of material fact as to each element of its failure to warn claim.  GE's motion for summary judgment on that claim should be denied.

/ / /

/ / /

32

IV.    **CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that:

1.      GE' Motion for Summary Judgment (Doc. 28) be **DENIED**.

2.      Plaintiff's Motion to Strike Iron Horse's Reply in Support of the

Motion for Summary Judgment (Doc. 40) be **GRANTED**.

3.      GE's Motion to Strike the Affidavit of Michael J. Foley (Doc. 43)

**GRANTED** in part and **DENIED** in part.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy

of the Findings and Recommendations of United States Magistrate Judge upon the

parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service hereof, or

objection is waived.

**IT IS ORDERED**.

DATED this 7th day of February, 2018.

TIMOTHY J. CAVAN
United States Magistrate Judge